IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MICHAEL SHANE DUNN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-15-3767 |
| | § | |
| DAKOTA DAVIDSON, | § | |
| | § | |
| Defendant. | § | |

## **MEMORANDUM AND ORDER**

Michael Shane Dunn filed this prisoner civil rights case under 42 U.S.C. § 1983, alleging that former correctional officer Dakota Davidson used excessive force against him while Dunn was incarcerated in the Texas Department of Criminal Justice - Correctional Institutions Division ("TDCJ"). On February 8, 2017, the Court granted Davidson's motion for summary judgment on the claims against him in his official capacity as a state employee, but denied summary judgment on Davidson's contention that he was entitled to qualified immunity from the claims against him in his individual capacity [Doc. # 81]. With the assistance of appointed counsel, Dunn has filed an amended complaint [Doc. # 95]. Now pending before the Court is Davidson's renewed motion for summary judgment on the remaining claims against him in his individual capacity [Doc. # 108]. Dunn has filed a response [Doc. # 111].

After considering all of the pleadings, the evidence, and the applicable law, Davidson's summary judgment motion will be denied for reasons set forth below.

I. **BACKGROUND**

On August 10, 2014, Dunn was incarcerated by TDCJ at the Wynne Unit in Huntsville, where Davidson was working as a correctional officer.[1] While Davidson was escorting prisoners from their assigned cell block that morning, Dunn contends that Davidson became impatient and irate with Dunn's slow pace in exiting his cell.[2] As Dunn proceeded down the row of the cell block, he paused to ask one of his fellow inmates a question.[3] When he did so, Dunn claims that Davidson charged at him "in a threatening manner" and proceeded to "viciously beat [him]" without provocation.[4]

Dunn contends that the assault by Davidson left him with a bloody nose and two blackened eyes that remained black for three months.[5] Dunn sustained a cut underneath his left eye and broken wisdom teeth as the result of blows to the head by Davidson during the assault, which also resulted in "chronic sensations of dizziness,

---

[1] First Amended Complaint [Doc. # 95], at 2-3. For purposes of identification, all page numbers refer to the pagination imprinted by the Court's electronic filing system, CM/ECF.

[2] *Id.* at 3.

[3] *Id.* at 4.

[4] *Id.*

[5] *Id.*

headaches, and a swollen face and eyes[.]"[6] Alleging that Davidson used excessive force in violation of the Eighth Amendment, Dunn seeks compensatory and punitive damages against Davidson in his individual capacity under 42 U.S.C. § 1983.[7]

Davidson does not deny that force was used against Dunn during their encounter at the Wynne Unit on August 10, 2014.[8] Davidson maintains, however, that he did not violate Dunn's constitutional rights because the application of force was necessary in response to Dunn's aggressive conduct and resulted in minimal injury.[9] Arguing further that his actions were reasonable under the circumstances, Davidson moves for summary judgment on the grounds that he is entitled to qualified immunity from Dunn's claims against him.[10]

## II. **STANDARD OF REVIEW**

The defendant's motion for summary judgment is governed by Rule 56 of the Federal Rules of Civil Procedure. Under this rule, a reviewing court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV.

---

[6] *Id.* at 4-5.

[7] *Id.* at 6-9.

[8] Defendant's Motion for Summary Judgment [Doc. # 108], at 9-10.

[9] *Id.* at 9-11.

[10] *Id.* at 11-12.

P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is "material" if its resolution in favor of one party might affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is "genuine" if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party. *Id.*

If the movant demonstrates the absence of a genuine issue of material fact, the burden shifts to the non-movant to provide "specific facts" showing the existence of a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In making this determination, a reviewing court "may not undertake to evaluate the credibility of witnesses, weigh the evidence, or resolve factual disputes." *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991). At the summary judgment stage, a reviewing court must "construe all facts and inferences in the light most favorable to the nonmoving party." *Dillon v. Rogers*, 596 F.3d 260, 266 (5th Cir. 2010) (internal citation and quotation marks omitted). This means that "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Tolan v. Cotton*, 134 S. Ct. 1861, 1863 (2014) (per curiam) (quoting *Anderson*, 477 U.S. at 255). If the evidence in the record is such that a reasonable jury could arrive at a verdict in that party's favor, the motion for summary judgment must be denied. *Int'l Shortstop, Inc.*, 939 F.2d at 1263.

## III. DISCUSSION

### A. Qualified Immunity

Davidson argues that he is entitled to qualified immunity from liability in his individual capacity because he did not violate Dunn's constitutional rights and his actions were objectively reasonable. Public officials acting within the scope of their authority generally are shielded from civil liability by the doctrine of qualified immunity. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). A plaintiff seeking to overcome qualified immunity must show: "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (citation omitted). If the defendant's actions violated a clearly established constitutional right, the final step of the analysis asks whether qualified immunity is appropriate, nevertheless, because the defendant's "actions were objectively reasonable" in light of "law which was clearly established at the time of the disputed action." *Collins v. Ainsworth,* 382 F.3d 529, 537 (5th Cir. 2004).

The plaintiff bears the burden of negating a defendant's claim of qualified immunity. *See Bazan v. Hidalgo Cty.*, 246 F.3d 481, 489-90 (5th Cir. 2001). To avoid summary judgment on the defendant's qualified immunity defense, a plaintiff must present evidence to raise a fact issue "material to the resolution of the questions

5

whether the defendants acted in an objectively reasonable manner in view of the existing law and facts available to them." *Lampkin v. City of Nacogdoches*, 7 F.3d 430, 435 (5th Cir. 1993). "Even if a defendant's conduct actually violates a plaintiff's constitutional rights, the defendant is entitled to qualified immunity if the conduct was objectively reasonable." *Zarnow v. City of Wichita Falls, Tex.*, 500 F.3d 401, 408 (5th Cir. 2007) (quoting *Pfannstiel v. City of Marion*, 918 F.2d 1178, 1183 (5th Cir. 1990)).

### B. Excessive Force in Violation of the Eighth Amendment

As noted above, Davidson does not deny that he used force against Dunn during the altercation that occurred on August 10, 2014. During the administrative investigation of the use of force, Davidson admitted striking Dunn multiple times in the face with a closed fist and also striking him with his elbow during the ensuing struggle.[11] Dunn claims that the use of force was excessive to the need in violation of the Eighth Amendment.

Claims of excessive force in the prison context are governed by the Eighth Amendment, which prohibits cruel and unusual punishment. *See, e.g., Whitley v. Albers*, 475 U.S. 312, 319-21 (1986). In evaluating excessive-force claims under the Eighth Amendment, the "core judicial inquiry" is "whether force was applied in a

---

[11] TDCJ Use of Force Report Employee Participant Statement [Doc. # 111-4], at 3.

good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992). In *Hudson*, the Supreme Court articulated the following relevant factors to consider in evaluating whether force used was excessive to the need: (1) the extent of the injury suffered; (2) the need for the application of force; (3) the relationship between the need and the amount of force used; (4) the threat reasonably perceived by the responsible officials; and (5) any efforts made to temper the severity of a forceful response. *See id.* at 7 (citation omitted); *see also Cowart v. Erwin*, 837 F.3d 444, 452 (5th Cir. 2016) (reciting the "well-known *Hudson* factors"). No single factor is exclusive or determinative of whether excessive force was used. *See Baldwin v. Stalder*, 137 F.3d 836, 839 (5th Cir 1998) (citation omitted). Each case must be judged on its own facts. *See id.*

Turning to the first factor outlined in *Hudson*, the Court has already determined that Dunn suffered injuries that were more than *de minimis* as the result of the force used against him by Davidson on August 10, 2014.[12] Consistent with its previous decision, which is incorporated here by reference, medical records from the incident confirm that Dunn suffered a bloody nose, a black eye, and redness on the side of his head.[13] Photographs taken of Dunn shortly after incident occurred reflect that Dunn's

---

[12] *See* Memorandum and Order [Doc. # 81], at 10.

[13] TDCJ Use of Force Report Employee and Offender Use of Force Injury Report [Doc.
(continued...)

left eye was completely swollen shut.[14] These injuries are significant for purposes of establishing a claim under the Eighth Amendment. Although Davidson attempts to downplay the extent of Dunn's injuries, it is well established that a use of force may violate the Eighth Amendment even though an inmate's injury may not be serious. *See Hudson*, 503 U.S. at 4. "An inmate who is gratuitously beaten by guards does not lose his ability to purse an excessive force claim merely because he has the good fortune to escape without serious injury." *Wilkins v. Gaddy*, 559 U.S. 34, 38 (2010) (per curiam).

All of the other factors listed in *Hudson* are sharply disputed by the parties. Davidson, who was evidently the only officer on the run when the altercation occurred, claims that he reacted with force because Dunn "leaned towards [him]" and made a threatening remark, which caused Davidson to become "frightened."[15] Thus, Davidson contends that force was necessary because Dunn made an aggressive, threatening move towards him.[16] Pointing to what Davidson contends are the minimal injuries sustained by Dunn, Davidson argues further that the amount of force was

---

[13](...continued)
# 111-6], at 3.

[14]     Photographs [Doc. # 111-7], at 2-4.

[15]     Deposition of Dakota Davidson [Doc. # 111-2], at 6.

[16]     Defendant's Motion for Summary Judgment [Doc. # 108], at 9-10; Deposition of Dakota Davidson [Doc. # 111-2], at 6.

8

reasonably related to his need to protect himself and restore order in response to the threat he perceived.[17]

In response to Davidson's arguments, Dunn maintains that force was not necessary because he was obeying orders and did not make any aggressive moves toward Davidson.[18] In support, Dunn has provided statements from other offenders who say that they heard Davidson threaten to harm Dunn immediately before assaulting him.[19] Dunn points in particular to witness statements and deposition testimony from Daniel Burke, who was in the cell closest to the altercation when it occurred. Burke states that he saw Davidson repeatedly punching Dunn in the face or head and that the beating continued while Dunn was on the ground and offering no resistance.[20] According to Burke, Davidson attacked without provocation and continued striking Dunn, who he describes as "totally helpless from the on-set."[21]

---

[17] Defendant's Motion for Summary Judgment [Doc. # 108], at 10-11.

[18] *See* Plaintiff's Response and Affidavit in Opposition to Defendant's [Previous] Motion for Summary Judgment [Doc. # 80], at 1-2, 9.

[19] Affidavit of James Wesley McCartney, TDCJ #649175 [Doc. # 1-5], at 3; Witness Statement of Delbert Shane Simmons, TDCJ #760327 [Doc. # 1-5], at 5; Witness Statement of Fredrick Davis, TDCJ #597029 [Doc. # 1-5], at 7.

[20] TDCJ Inter-Office Communication (Witness Statement) [Doc. # 111-9], at 2.

[21] TDCJ Use of Force Report Witness Statement [Doc. # 111-8], at 2.

Burke contends that Dunn never made any aggressive gesture toward Davidson and that Dunn did not even defend himself while he was being beaten.[22]

Dunn notes, moreover, that Davidson made no effort to defuse the situation as required by the TDCJ policy that governs the use of force.[23] Davidson admitted during his deposition that he did not use his radio to call for assistance or deploy pepper spray, which he was carrying at the time, before resorting to physical violence.[24] Davidson explained that he did not take steps to stabilize the situation or call for aid because, due to Dunn's aggressive posture, he did not believe that he had time.[25] Dunn disagrees and points again to the statements given by Daniel Burke, who reported that Davidson attacked Dunn without provocation and made no effort to temper the use of force because he continued to beat Dunn well after he was helpless on the ground and offering no resistance.[26]

After reviewing all of the exhibits and arguments by the parties, it is clear that genuine issues of material fact remain regarding whether force was needed and, if so,

---

[22] Deposition of Daniel Burke [Doc. # 111-1], at 11.

[23] TDCJ Use of Force Plan [Doc. # 111-3], at 20-21 (listing "reasonable actions" that should be taken to stabilize the situation "whenever possible" before implementing force).

[24] Deposition of Dakota Davidson [Doc. # 111-2], at 9-10.

[25] *Id.* at 14-15.

[26] TDCJ Use of Force Report Witness Statement [Doc. # 111-8], at 2.

whether it was excessive to that need in violation of the Eighth Amendment. These same fact issues preclude a finding that Davidson's actions were reasonable under the circumstances such that he is otherwise entitled to qualified immunity. Accordingly, Davidson's motion for summary judgment on the issue of qualified immunity must be denied.

## IV. CONCLUSION AND ORDER

Based on the foregoing, the Court **ORDERS** that the motion for summary judgment filed by Defendant Dakota Davidson [Doc. # 108] is **DENIED**. According to the current scheduling order, the deadline for mediation expired on February 23, 2018, the parties' joint pre-trial order is due June 22, 2018, and docket call is set for July 24, 2018 [Doc. # 105]. While the parties are encouraged to mediate (or re-mediate) this dispute before trial, due to the length of time that this case has been pending, no further requests for extensions of remaining deadlines are likely to be granted.

The Clerk will provide a copy of this order to the parties.

SIGNED at Houston, Texas on <u>May 4</u>, 2018.

_____
NANCY F. ATLAS
SENIOR UNITED STATES DISTRICT JUDGE